UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ROBERT BRYANT, TRINTON HATTON and  :
MARC MEETERS, Individually and on behalf  :   No. 1:17-cv-07638 (CM) (HBP)
of themselves and all others similarly situated,  :
                                      :

                Plaintiffs,  :
                                      :

v.  :

POTBELLY SANDWICH WORKS, LLC,  :
                                      :

                Defendant.  :
                                      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ORDER AND OPINION APPROVING PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT, FOR AWARD OF ATTORNEYS' FEES AND EXPENSES, FOR APPROVAL OF SERVICE PAYMENTS TO THE REPRESENTATIVE PLAINTIFFS AND FOR PAYMENT OF THE SETTLEMENT ADMINISTRATOR'S COSTS AND EXPENSES

McMahon, C.J.:

      Plaintiffs Robert Bryant, Trinton Harris, and Marc Meeters, individually and on behalf of themselves and all others similarly situated, seek final approval of the parties' settlement of this class and collective action lawsuit against Potbelly Sandwich Works, LLC ("Potbelly" or "Defendant") involving the unpaid wage claims of Potbelly's assistant managers paid as salaried but exempt from overtime pay ("Assistant Managers" or "AMs"). After two years of litigation, the parties reached a proposed agreement to resolve Plaintiffs' wage and hour class and collective claims for the Gross Settlement Amount of $561,375.92. The settlement satisfies all criteria for approval of a settlement of a Fair Labor Standards Act ("FLSA") collective and an Illinois Minimum Wage Law ("IMWL") class action settlement because it resolves a *bona fide* dispute, was reached after contested litigation, resulted from arm's-length negotiations between counsel

well-versed in wage and hour law, and satisfies all other criteria for approving a FLSA and class action settlement.

With this motion, Plaintiffs ask the Court to: (1) grant final approval of the Settlement Agreement and Release ("Settlement Agreement") attached as Exhibit A to the Declaration of Fran Rudich in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement ("Rudich Decl.") (ECF No. 110) as adequate, fair and reasonable as to the Fair Labor Standards Act ("FLSA") settlement collective and the Illinois settlement class; (2) grant final certification of the Illinois settlement class; (3) grant approval to pay the Settlement Administrator, RG/2 Claims, in the amount of $32,871; (4) grant approval of attorney's fees and costs in the amount agreed upon in the Settlement Agreement (attorneys' fees of $187,125.31, and costs and expenses of $18,062.78); and (5) grant approval of the service payments to the named Plaintiffs on the First Amended Complaint as follows: (i) $5,000 each for the two original named Plaintiffs, Robert Bryant and Trinton Hatton; and (ii) $2,500 for Illinois named Plaintiff Marc Meeters.

## RELEVANT BACKGROUND

Plaintiffs recited the extensive history of this case, as well as the terms of the settlement and the form and content of the notice, in their preliminary approval motion (ECF Nos. 109-110) ("Preliminary Approval Motion"), which this Court granted on November 1, 2019 (ECF No. 112).

Under the Court's approval rder, the period for filing timely objections ended on January 5, 2020.  There were no objections filed within the Court-ordered objection period, and there have been no objections filed to date.  Of the 202 total IL and FLSA class and collective members, no individual filed a request for exclusion from the settlement.  The settlement was approved by 100% of the eligible settlement participants.

Also, on November 5, 2019, Defendant served all required government officials with the notices required by the Class Action Fairness Act ("CAFA"). The 90 day period for those CAFA notice recipients to lodge objections to the settlement concluded on February 4, 2020. There were no objections from any government officials in response to CAFA notices. (ECF No. 119, Rudich Declaration in support of Plaintiffs' Motion for Final Approval ("Rudich Second Decl.") ¶ 19.)

## DISCUSSION

## I.     FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE.

### A.     The Settlement Is Fair, Reasonable, and Adequate.

The settlement involves FLSA collective action and Illinois class action claims. The Settlement Agreement complies with the Second Circuit's guidance in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). Plaintiffs note: (a) the Agreement has no restrictive confidentiality provisions that would conflict with the remedial purposes of the FLSA; (b) the release obtained from all Opt-in and Illinois Class Members is narrowly tailored to the FLSA claims alleged here; and (c) the attorneys' fees which equate to one-third of the total settlement amount are fair and consistent with the retainer agreement between Plaintiffs and their counsel.

In evaluating a class action settlement under Fed. R. Civ. P. 23, courts in the Second Circuit generally consider the nine factors in *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974): (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund, given the best recovery; and (9) the range

of reasonableness of the settlement fund to a possible recovery, given all the attendant risks of litigation. *Id*. at 463. Because "the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement," satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement. *Henry v. Little Mint, Inc.*, 2014 U.S. Dist. LEXIS 72574, at *18 (S.D.N.Y. May 23, 2014) (citations omitted).

### 1.    Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1)

By settling prior to trial, Plaintiffs will avoid further expense and delay in obtaining a recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Particularly in complex wage and hour litigation like this one, involving both federal and state statutory rights, protracted litigation is costly and burdensome, and includes motion practice and potential appeals over class certification. *See Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, at *4 (S.D.N.Y. Mar. 24, 2008).

Barring settlement, the parties would expect to engage in extensive pre-trial motion practice as to dispositive motions, class certification and decertification motions, motions *in limine*, and oppositions to such motions. Discovery, trial witness and expert depositions will almost certainly also take place, which could have led to further document productions, depositions, and discovery motions. Moreover, to establish the nature of the AM position and the applicability of exemptions to the FLSA and IMWL, a complicated trial would have been necessary, featuring extensive testimony by Potbelly managers and executives, Plaintiffs, and Class Members, and possibly experts.

This settlement provides monetary relief to Class Members in a prompt and efficient

manner. Thus, the first factor weighs in favor of judicial approval of the settlement. *See, e.g.*, *Sewell v. Bovis Lend Lease LMB, Inc.*, 2012 U.S. Dist. LEXIS 53556, at *19 (S.D.N.Y. Apr. 16, 2012) ("Litigating the claims of hundreds of putative class members would undoubtedly yield expensive litigation costs that can be curbed by settling the action.") (citation omitted).

### 2. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362-63 (S.D.N.Y. 2002). Here, no Class member objected to the settlement, no Opt-in requested exclusion from the settlement, and no absent Illinois Class members who had not opted in to the litigation during the notice phase requested exclusion. The settlement was thus approved by 100% of the eligible settlement participants.

This positive response to the settlement strongly favors judicial approval. *See*, *e.g., Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239-240 (E.D.N.Y. 2010) (with 127 opt outs and 24 objections in class of over 11 million, the court stated, "[g]iven the relatively small number of class members who opted out or objected to the Settlement, the Court finds that the reaction of the class has been overwhelmingly positive, which strongly weighs in favor of Settlement approval.").

### 3. The Parties Engaged in Sufficient Discovery to Resolve the Case Responsibly (*Grinnell* Factor 3).

On this factor, the proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (citation and internal quotations omitted); *see also Ballinger v.*

*Advance Magazine Publrs., Inc.*, 2014 U.S. Dist. LEXIS 179538, at *4-5 (S.D.N.Y. Dec. 29, 2014) (granting approval where case "settled before depositions were conducted, . . . [but] both sides were well acquainted with the facts and the nature of the various internships at issue").

The discovery the parties conducted satisfies this standard. Discovery and document production included (1) the job description for the position, and (2) a spreadsheet containing over 52,000 lines of data reflecting dates in the relevant positions for each of the Opt-ins, daily time recorded in the restaurant time keeping system by each of the Opt-in AMs during the maximum lookback recovery period under the limitations periods, and the salary of each of the Named Plaintiffs and Opt-ins. Rudich Decl., ¶ 8. Plaintiffs also interviewed nearly 50 Opt-ins about their hours worked, including off-the-clock work Plaintiffs allege they performed while they were not swiped-in to Potbelly's timekeeping system (*e.g.*, receiving and stocking inventory, making deliveries, picking up product from stores or other Potbelly locations, training, and attending meetings) and, while on meal breaks. *Id.* ¶ 10. The parties were well-positioned to evaluate the strength of their respective positions and potential damages recoverable. This factor favors approval. *See, e.g., Sewell*, 2012 U.S. Dist. LEXIS 53556, at *18 (granting final approval where parties exchanged voluminous documents and plaintiffs' counsel interviewed class members).

4.      **Plaintiffs Would Face Real Risks of Establishing Liability and Damages If the Case Proceeded (*Grinnell* Factors 4 and 5).**

"Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Though Plaintiffs believe their case is strong, it is subject to risk. "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969). In assessing the risks of liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank*

*Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotations and citation omitted).

Here, Plaintiffs recognize the substantial risks of proceeding to trial, including the possibility that a trial might not result in any recovery or might result in a recovery less favorable to the settlement class and collective members. Plaintiffs would have to prevail at trial and on appeal, a process inherently uncertain and lengthy. But even the possibility that the class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Invest., Inc. v. DWG Corp.,* 962 F.2d 1203, 1206 (6th Cir. 1992) (quotation omitted). The proposed settlement "provides for relief now, not some wholly speculative payment of a hypothetically larger amount years down the road." *Strougo v. Bassini,* 258 F. Supp. 2d 254 (S.D.N.Y. 2003).

Besides the risks of proving the merits of the claim and maintaining a class and collective action through trial, Plaintiffs would also face risk in determining the proper method for calculating damages.[1] The parties dispute whether overtime should be calculated at half- time rates or time-and-a-half rates. Defendant's position throughout this litigation has been that AMs were exempt; but even if damages were to be awarded, they could only be calculated by the diminishing half-time method of dividing weekly salary by all hours worked then multiplying that rate – which decreases with each overtime hour worked – by .5 for any hours over 40, relying on its interpretation of *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942);

---

[1] Some district courts, including within this Circuit, have ruled that damages must be calculated at the default time-and-a-half method of dividing salary by the 40 non-overtime hours in a week to determine regular non-overtime rate, then multiplying that rate by 1.5 for all overtime hours worked. *See*, *e.g*., *Strauch v. Comput. Scis. Corp*., 2018 U.S. Dist. LEXIS 192713 (D. Conn. Nov. 9, 2018). Other district courts in this Circuit have held it to be a jury question. *See*, *e.g*., *Nelson v. Sabre Cos. L.L.C*., 2018 U.S. Dist. LEXIS 122325 (N.D.N.Y. July 23, 2018) (dispute over total hours the annual salary intended to cover created a triable issue for jury determination, opining that damages calculation method for misclassification cases "remains unsettled in this circuit" and declining to rule that half-time FWW methodology must be applied in such cases).

*Banford v. Entergy Nuclear Operations, Inc.*, 649 F. App'x 89 (2d Cir. 2016).

**5.     Establishing and Maintaining the Class Through Trial Presents Risk (*Grinnell* Factor 6).**

Although Plaintiffs obtained conditional certification of the FLSA collective action by stipulation, they were by no means guaranteed to maintain that certification at the decertification stage or obtain class action certification under the more stringent analysis that applies to Rule 23 non-settlement class certification.  *See, e.g., McEarchen v. Urban Outfitters, Inc.*, 2017 U.S. Dist. LEXIS 144203 (E.D.N.Y. Sep. 6, 2017) (decertifying collective action of retail managers and denying Rule 23 class action certification of exemption misclassification claims).  The settlement of these claims ensures that the class and collective will avoid the associated risks, delays, and dismissals that could result from decertification and contested class certification proceedings.

**6.     Defendants' Ability to Withstand a Greater Judgment Is Not Determinative (*Grinnell* Factor 7).**

Plaintiffs' settlement valuation analysis appropriately considered Defendant's most recent two 10-k annual report filings with the SEC reporting net operational losses.  Regardless, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9 (internal brackets omitted)).  The settlement eliminates any risk of collection at a future date by requiring Potbelly to pay the full settlement amount promptly following the settlement effective date. Rudich Decl. Ex. A, ¶ 3.1.

**7.     The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)**

The settlement amount represents substantial value given the risks of litigation.

Determining whether a settlement amount is reasonable "is not susceptible of a mathematical equation yielding a particularized sum." *In re Austrian & German Holocaust Litig.*, 80 F. Supp. 2d at 178 (quotations omitted). "Instead, 'there is a range of reasonableness . . . a range which recognized the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Henry*, 2014 U.S. Dist. LEXIS 72574, at *25 (citations and quotation omitted).

Here, the $561,375.92 settlement is reasonable because it is a substantial compromise of hotly disputed matters, providing significant benefits to members of the FLSA collective and IL Class. Under Plaintiffs' analysis, even if Plaintiffs proved that all collective and class members worked every minute they were logged in, taking no non-compensable meal breaks, the range of potential (but disputed) exposure for unliquidated damages is between $85.34 per workweek (using Defendant's preferred half-time method of calculating damages) to $320.04 per workweek (using Plaintiff's preferred time-and-a-half method of calculating damages). The settlement therefore represents between 170% and 45% of the projected recovery for FLSA settlement collective, and between 47% and 13% for the absent Illinois Settlement Class members who did not opt-in (again, applying conservative underlying assumptions about the provability of hours worked). *Id.* ¶ 38.

While Plaintiffs submit that such a settlement is an excellent result, in applying the standards for approval, there is nothing inherently suspect about a class action lawsuit that achieves a recovery for FLSA collective and IL Class Members of between 175%-45% and 43%-13% (depending on half-time/time-and-a-half calculations) of their maximum claimed unpaid overtime, respectively. *See*, *e.g.*, *Cagan v. Anchor Sav. Bank FSB*, 1990 U.S. Dist. LEXIS 11450, at *34 (E.D.N.Y. May 17, 1990) (approving $2.3 million class settlement over

objections that the "best possible recovery would be approximately $121 million").

III. **PLAINTIFFS' REQUESTS FOR ATTORNEYS' FEES, COSTS, AND SERVICE PAYMENTS ARE REASONABLE AND SHOULD BE APPROVED**

A. **The Percentage Method is the Preferred Method in the Second Circuit for Awarding Attorneys' Fees in a Common Fund Case**

In class action lawsuits to recover wages, "public policy favors [a common fund] award" of attorneys' fees. *Frank*, 228 F.R.D. at 189. Although there are two ways to compensate attorneys for successful prosecution of statutory claims – the lodestar method and the percentage of the fund method – in common fund cases like this one, courts in this Circuit prefer to award fees as a percentage of the fund. *Dupler*, 705 F. Supp. 2d at 242 (*quoting Wal-Mart Stores*, *Inc. v. Visa USA Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("'The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for efficient prosecution and early resolution of litigation'")).

B. **Plaintiffs' Request for Attorneys' Fees Is Reasonable**

Class Counsel seeks an award of attorneys' fees for $187,125.31, which represents one-third of the $561,375.92 common settlement fund, which Defendant does not oppose. As set forth below, this request is reasonable and well within the accepted range awarded in wage and hour cases in this District and throughout the Second Circuit.

1. **Class Counsel Have Expended Significant Time and Labor**

Class Counsel's time and labor invested in litigating and settling this case was significant and reasonable. Class Counsel has been prosecuting this litigation for over two years. In furtherance of their efforts, Class Counsel together expended 979.18 hours of professional time for an aggregate lodestar over $525,000. Rudich Second Decl. ¶¶ 28, 32. The hours reported are reasonable for a case of this complexity and magnitude and length and were compiled from time

records duly maintained by each attorney, paralegal, and support staff.  *Id.* ¶ 32; Ex. C (Declaration of C. Andrew Head ("Head Decl.")) ¶ 17.

Besides the work performed to date (*see* Rudich Second Decl., ¶ 30), Class Counsel will have to perform additional work to effectuate the administration of the settlement.  *See, e.g.*, *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) ("Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund.").

The hours reported here are reasonable for a case of this complexity, magnitude and length, and were compiled from contemporaneous time records duly maintained by each attorney, paralegal, and support staff participating in the case (*see* Rudich Second Decl. ¶ 32; Ex. C).  Class Counsel communicated regularly to ensure no unnecessary time was incurred, nor duplication of effort.  In fact, the hours and time expended turned out to be significantly *more* than the amount of the fee request in the case, which has led to a negative multiplier (0.35) being requested.  *Id.*

**2.    The Class Members are Represented by Class Counsel with Significant Experience in Wage and Hour Litigation**

Plaintiffs submit that the quality of lawyering has been high on both sides.  "To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the case."  *Tiro v. Pub. House Invs., LLC*, 2013 U.S. Dist. LEXIS 129258, at *42 (S.D.N.Y. Sept. 10, 2013); *Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 105775, at *51-52 (S.D.N.Y. Sept. 16, 2011) (same).  The Class Members are represented by experienced counsel who have invested substantial time and resources into the prosecution of this litigation.  *See* Rudich Second Decl. ¶¶ 30, 32; Head Decl. ¶ 17.  Class Counsel have served as class counsel in numerous class and collective actions, including many significant wage and hour

overtime cases involving retail assistant managers.  Rudich Second Decl. ¶ 36; Head Decl. ¶ 14.

Defendant was represented by Jackson Lewis, a nationwide management-side law firm with a well-known and respected employment and labor law practice.  "The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work," and Defendant's counsel vigorously defended Potbelly.  *Tiro*, 2013 U.S. Dist. LEXIS 129258, at *42-43 (quoting *In re Glob. Crossing Sec. & ERISA Litig*., 225 F.R.D. 436, 467 (S.D.N.Y. 2004)).  This factor weighs in favor of the requested fees.

### 3.      This Circuit Has Awarded Similar Requests for Attorneys' Fees

Class Counsel's request for a one-third fee is "consistent with the norms of class litigation in this circuit."  *McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 U.S. Dist. LEXIS 18913, at *20 (S.D.N.Y. Mar. 2, 2010).  "'In class settlement funds like this one, a one-third award of the settlement proceeds [for attorneys' fees] is considered typical and reasonable . . . because "[t]he attorneys' fees requested were entirely contingent upon success.  Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation.'"  *Knapp v. Badger Techs., Inc*., 2015 U.S. Dist. LEXIS 77186, at *15 (W.D.N.Y. June 15, 2015) (quotations omitted).

### 4.      Public Policy Considerations Favor The Fee Requested

Public policy supports the requested fee award because the award "properly balances the policy goal of encouraging counsel to pursue meritorious actions while protecting against excessive fees."  *Dupler*, 705 F. Supp. 2d at 244.  Where relatively small claims can only be prosecuted through aggregate litigation, and where wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk, "[a]dequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of those statutes."

*Johnson*, 2011 U.S. Dist. LEXIS 105775, at *56 (citations omitted).

Here, Class Counsel successfully obtained significant monetary compensation for the Class Members. "In addition, no Class Members objected to the attorneys' fees or any other part of the settlement, a reaction which is entitled to great weight by the Court." *Tiro*, 2013 U.S. Dist. LEXIS 129258, at *43. This favors the requested attorneys' fees. *Id.*; *Khait v. Whirlpool Corp.,* 2010 U.S. Dist. LEXIS 4067, at *16 (S.D.N.Y. Jan. 20, 2010) ("'The fact that the vast majority of class members neither objected nor opted out is a strong indication' of fairness.") (quotations omitted).

### 5. The Lodestar Cross Check Further Supports an Award to Class Counsel of One-Third of the Settlement Fund

"[T]he trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a baseline or cross check." *Tiro*, 2013 U.S. Dist. LEXIS 129258, at *46 (citation omitted). The lodestar analysis is performed by multiplying the number of hours reasonably expended on a client's case by a reasonable hourly billing rate for such services. *See Johnson*, 2011 U.S. Dist. LEXIS 105775, at *58 (citation omitted). "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Goldberger v. Integrated Res.*, 209 F.3d 43, 50 (2d Cir. 2000). Courts in this Circuit regularly award lodestar multipliers from two to six times lodestar with some courts approving fee requests that are "up to eight times the lodestar, and in some cases, even higher…." *Beckman*, 293 F.R.D. at 477 (fee of 6.3 times lodestar in overtime class action approved). *See also*, *e.g.*, *Wal-Mart*, 396 F.3d at 123 (3.5 multiplier deemed reasonable, citing cases involving multipliers between 1.35 and 4.5).

Here, Class Counsel's lodestar is a negative multiplier. *See* Rudich Second Decl. ¶ 28. "Where a percentage fee is on the higher end of the range of reasonable fees but still represents a

negative multiplier to the total lodestar, there is 'no real danger of overcompensation.'" *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515 (S.D.N.Y. 2009). Class Counsel's fee request is well within the range of reasonability, particularly for a case in which the Class Members' reaction has been so positive, not one Class Member objected to the fee request explained in the Notice, and the result obtained a high proportion of possible recovery.

### C. The Court Should Approve Payment of Costs and the Settlement Expenses from the Settlement Fund

Under the Settlement Agreement, Class Counsel seeks reimbursement for litigation expenses of $18,062.78 from the settlement fund, and payment of the notice and settlement costs to the Claims Administrator, RG/2 Claims. "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients." *In re Indep. Energy Holdings Pub. Ltd. Co. Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (quotation omitted). As stated in the Rudich Second Declaration at paragraph 33, Class Counsel's expenses are monies that counsel has invested at their own expense to meet the costs of the litigation and they totaled $18,062.78 through the date of final calculations before issuance of settlement notice, which is actually less than the total expenses that Class Counsel will actually incur through the Final Approval hearing. The costs were reasonable and incurred in the prosecution of this matter. They include expenses such as filing fees, postage, on-line research, two mediations and mediation travel. *Id.* The expenses were incurred to benefit the Class Members, and Class Counsel may be reimbursed for them. *See, e.g., Stefaniak v. HSBC Bank USA, NA*, 2008 U.S. Dist. LEXIS 53872, at *11 (W.D.N.Y. June 28, 2008); *Chambery v. Tuxedo Junction Inc.*, 2014 U.S. Dist. LEXIS 101939, at *26-27 (W.D.N.Y. July 25, 2014). No objections were received to the expense request. Declaration of Dana Boub at

RG/2 Claims ("RG/2 Decl.") ¶ 14.

As to its costs and expenses, RG/2 Claims has provided notice as directed by the Court. Going forward should the Court finally approve this settlement, the Settlement Administrator will make settlement payments, confirm final calculations of payroll taxes, and issue W-2 and 1099 forms to all participating Settlement Class Members. Rudich Decl. Ex. A, ¶ 3.4(v). RG/2 Claims has incurred notice administration costs and has estimated that its total expenses after handling the settlement administration to completion will be $32,871, RG/2 Decl. ¶ 13. Based on Class Counsel's experience, this amount is reasonable. Rudich Second Decl. ¶ 41.

**D.     Service Payments to Named and Representative Plaintiffs Should Be Approved**

Courts routinely approve service payments in wage and hour class and collective actions. *See, e.g., Frank*, 228 F.R.D. at 187 ("[S]uch awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.").

Without opposition, Plaintiffs seek service payments of $5,000 to each of the two original Named Plaintiffs and $2,500 to the Illinois Class Representative Plaintiff. The request is reasonable given the contributions these individuals made to advance the prosecution and resolution of this case: aiding Class Counsel's investigation and prosecution of the claims, providing information and documents to Class Counsel, communicating with Class Counsel to discuss the strategy, prosecution, and settlement of the cases, and participating in discovery. Rudich Second Decl. ¶ 30. Their efforts substantially aided the prosecution of this case on behalf of the Class Members and warrant recognition.

The requested service awards amount to 2.23% of the total recovery, which is a reasonable

percentage. *See*, *e.g.*, *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, 2010 U.S. Dist. LEXIS 12762, at \*6 (S.D.N.Y. Feb. 9, 2010) (finding that service awards totaling 11% of the total recovery are reasonable "given the value of the representatives' participation and the likelihood that class members who submit claims will still receive significant financial awards"). The service awards being requested here are well within the range of typical awards in similar cases.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Unopposed Motion for Final Approval of Settlement, for Award of Attorneys' Fees and Expenses, for Approval of Service Payments to the Representative Plaintiffs and for Payment of the Settlement Administrator's Costs and Expenses id GRANTED. The clerk of the court is directed to close Docket Number 117.

SO ORDERED.

Dated: February 4, 2020

_____
The Honorable Colleen McMahon